Mr. Sheets, the Court also appreciates your willingness to accept the appointment. Thank you, Your Honor. May it please the Court. In this case, the discovery violations led to an unfair trial. The unfair trial could have only been remedied with a mistrial. The Court did not grant the motion for mistrial. But in considering the issue, the Court found that, and I'm quoting, much of the information contained in the undisclosed, unidentified report was unknown to the defense in any form as to this witness. And so the defense had no other means to prepare for the examination of this witness. The district court also rejected the government's position that it complied with the discovery obligation, stating, I think that's misguided and incorrect. I'm incredibly disappointed in the government for believing that their obligations were complete by leaving a trail of crumbs for the defendant to track to find this witness. And finally, the Court found that the violations were particularly egregious in light of the litigation in this case. And that statement goes back to the fact that in this case, the government in providing the quarter of discovery redacted every single name of a fact witness. Imagine how difficult that is to prepare when you don't have a name for a person associated with a statement. And I note that once the government was required to disclose the names of its witnesses, it led directly to the acquittal of the defendant on the firearm charge. So in the government's brief at page 40, the government writes, quote, defense is exaggerating the discovery issues. Nowhere in its brief, 12,800 words, does the government state that the district court was so frustrated by the government's behavior that it ordered the AUSA to self-report to the DOJ Office of Professional Responsibility. What was it about the remedy that the district court chose that was inadequate? The district court chose to strike most of the witness's testimony. But the district court did so only after the following day. So the witness testified in the morning on day three of the trial. The district court gave a limiting instruction to the jury the following morning. And as I set forth, I cited a couple cases in the brief where there has been that delay of, in this case, almost 24 hours where a jury could listen to what this witness said, that other courts have found that to be inadequate. How did the testimony come out? In other words, part of it was struck, right, but not all of it. Correct. Was that something that was fairly manageable for the jury? In other words, there was the questions about the gun, and then there were these other questions. Was that pretty, in your assessment of the way the evidence was presented, was that pretty clear to the jury on what they needed to do? The testimony, the witness was a former girlfriend of the defendant. And she testified that on several different issues, one of which was the defendant allegedly possessed a firearm. But she also testified about him being a meth user, being in possession of vacuum-sealed bricks of cocaine, which nobody else had testified to. She testified to he would carry three-inch wads of cash with him. So can a jury, after hearing that and considering that for 24 hours, be able to set that aside and pretend they didn't hear it? We would argue that any experienced trial lawyer would argue that that certainly is impossible. What was your best case for that proposition? That the length of time between the order to strike and the testimony having been given is a valid basis for a misdraft. Because, you know, in the world in which we live, we tell people all the time, we gave it a cautionary instruction, we gave it limiting instruction, and we presume the jury followed it. And so without some indication that the jury did not, that usually is good enough. And you're saying, well, in this case it's not. The primary reason is the delay of time. Do you have a case that actually says that in that many words? It's cited in my brief, Your Honor, about, I'd say, as this court has noted, quote, a bell once rung is difficult to unring. And the, and I'm quoting at page 51 of my brief, the district court's delay in giving the curative instruction undermined its value. And I cited a Third Circuit case which found that a belated curative instruction was ineffective. What's the name of that case? It's U.S. v. Edwards. Thank you. It's on page 51 of my brief. I also cited a Third Circuit case, GULO, G-U-L-O, which said that, quote, whatever efficacy curative instructions possess cannot help but be weakened by the lapse of time. And I also cited a D.C. Circuit case from 1980, Slade, which stated that it was impossible to know whether the improper testimony swayed the jury when a curative instruction did not come until the day following the testimony. The other thing that occurred with this issue is that the court ordered the parties that they could not comment on the fact that the witnesses' testimony had been struck. So all they had was, at the start of day four of the trial, they were instructed that they could not consider that evidence. And we just had to leave it at that. And so, of course, the jury is going to be wondering what happened. And I think that prejudiced the defense in terms of that it couldn't respond to, you know, that particular issue. So we would argue, and we certainly believe, Your Honors, that although the court did take and the court recognized that there were egregious discovery violations in this case, that it led to an unfair trial for the defendant. Just briefly on the other issue that we raised about the courts not allowing the defense to present evidence I've attached the offer of proof by Detective Alvarado to my addendum. And with that five pages of transcript, it clearly sets forth the importance of that evidence in that we have the homeowner where the controlled substance were found was selling the exact type of controlled substance from that very house. And we believe that that evidence was material and was certainly allowed under Rule 404B. Thank you, Your Honors. Good morning again. May it please the Court. As to the discovery issue, a constant theme emerges from this Court's precedent. And that is that discovery questions are the domain of the district court. And when they get appealed, whether it's a defendant claiming the sanction was too light, or it's the government complaining that the sanction was too heavy, this Court almost universally affirms the district court's judgment on the issue. And this case should be no different. In order to succeed today, the defendant has to prove that the only acceptable discovery sanction, the only reasonable result in this case, was to grant a mistrial. But that was just one of many options that were available to the district court. And in fact, when considering what is in essence a Janks Act violation, the preferred remedy in the Janks Act is first to give the defendant time to look at the statement in order to cross-examine the witness. And if that is not complied with, then the sanction is to strike the witness's testimony. This, though, was a discovery violation as well, right? There's a stipulated discovery order that this has to be turned over out of the gate and on a continuing obligation basis. Yeah, and to be clear, both the reports were disclosed timely. It's only the link between the two was not explicitly made. I mean, the violation, I'm not sure I've seen an explanation from a district court judge quite as firm as this in the disappointment and the egregious nature of the violation. So I think that that's sort of, nobody's appealing that. So then I guess the question becomes, I mean, the question then does become just the sanction. And it seems to me that, well, let me ask, do you take into consideration the egregiousness of the sanction in determining what appropriate sanction, what's appropriate? In other words, do I need to address, wow, this is really egregious. I know that she didn't say bad faith, and that would be another factor to consider. But it came right up to the precipice of bad faith. Does that factor in? Should that have been given more weight here? So it does factor in, and the district court considered it. The district court looked at all the circumstances and decided not to find bad faith. So, yes, it factors into the decision, but it's ultimately up to the district court to weigh the competing factors and come up with a sanction. And then you look at sort of what the harm is to the defendant, and whether or not it's in bad faith doesn't really affect the defendant's ability to defend the case, right? So why isn't this a situation where they didn't know who this witness was? They had no opportunity to prepare for it. There's quite a bit of testimony from the witness on some pretty inculpatory information. How can we expect a jury just to slice that out? So I'll try to cover all the questions you asked there. Sorry for this next question. But if I miss one, please let me know. So starting with the last, the instruction that the district court expressly invited the defendant to help craft drew a pretty clear line for the jury. It said, you can consider her testimony as to the gun, but nothing else. And this is not a situation where the parties were precluded from arguing, you know, don't consider that evidence. I don't agree with that characterization of what the district court said. The district court said, you're not allowed to argue to the jury the reason why it was struck. So you're not allowed to, you know, I'm imposing a discovery sanction, but you're not allowed to re-argue that reason for the discovery sanction to the jury. So I disagree with how the defendant has characterized that. But apart from that, looking at the prejudice that the defendant is alleging, he's been unable to articulate it. So the district court is asking on the third day of trial when this arose, how is it that this interfered with your preparation? He can't answer it. He has the whole night to think it over coming back on the morning of the fourth day of trial. Still can't articulate it. And even on appeal, I haven't heard in the briefs or today, what is it that the defense would have investigated? What is it that the defense would have found? And I get that, but that can be kind of a difficult thing to articulate when you didn't have it. It could have changed the focus of the defense. I don't know. I'm just sort of speculating here, but I think that that's the problem. We don't know what we would have done with it because I learned it on the third day of trial, and to require me to come up with something, you know, sort of after the fact is a little difficult. So I agree that the prejudice argument is speculative, but I disagree that it's not something that could have been developed. The defendant had an option to file a motion for new trial. So after trial, he could have taken the newly linked report, gone out and done an investigation, done what he would have done otherwise before trial, and wore out that investigation to find if it led to any admissible evidence, any further theories to present to the jury. He didn't take that opportunity. So it's not fair now to try to speculate about what he could have found when he could have done that and made the record on it. What is your response to the length of time between the presentation of the evidence and the instruction to the jury to disregard it? So, again, it's a factor that the court can consider, and although some circuits have found that significant, it's still up to the district court to come up with a reasonable remedy for this. And as this court and as the Supreme Court constantly say, we rely on the jury to follow instructions. Apart from that, the evidence that Danielle Barnes gave was not exceptional in this case. So the testimony about kilos of cocaine, well, when they looked through the defendant's house, they find a kilo press among his belongings, and it's something so rare that the 17-year veteran detective had never seen before. On top of that, there's testimony from the co-conspirators about constantly selling large quantities of drugs. So, for instance, Daniel Parker says he was getting half-pound to pound quantities on a regular basis. The part about large amounts of cash, well, Nicole Gasper testified that he was flashing big stacks of cash and said that's just my single day's profit. So everything that Danielle Barnes testified to wasn't culpatory. It was fair game for trial had it been fully linked before in the discovery materials, and there's nothing exculpatory about what she said. There's nothing impeaching about that unlinked report. So to say that this was highly prejudicial testimony is just not matching the record. Could you address the second issue? Yeah, the reverse 404B. So I point the court's attention to the reply brief, pages four to five, where the defendant encapsulates his theory on this, and his theory is the fact that Clemmie Kirk had possessed drugs at other times may have indicated that he possessed the drugs that were charged in this case. And that link is so generic that it is nothing more than a general propensity to possess drugs. Isn't that what the government offers in 404B, for knowledge and intent of prior conviction for possession with intent? I disagree that it's the same as the way the government presents evidence in a drug case. And the difference is in the materiality of the evidence. So in a possession with intent to distribute charge, the government bears the burden to show defendant's knowledge that the substance is drugs and the burden to show that the defendant had the intent to distribute. Neither of those elements were in play as to Clemmie Kirk. It all goes to did he possess the drugs found at the house or did he not? And the only link is this speculative theory that he possessed drugs before. You know, and I get that, except that we have a long line of cases, and I know that some members of our court don't understand or kind of wonder where it came from, where we say that the defendant has the right to present the theory of his case. And one of the theories of the case that we've allowed people to present in a lot of cases is the idea that someone else did it. And once they show that they actually have access to the site and they have otherwise engaged in that unlawful behavior or they had motive, because it goes knowledge, motive, intent, we'll let that come in, right? And it's only been very recently that we started seeing this, well, there was a Rule 404B, a reverse Rule 404B problem. And, I mean, it seems we run headlong into our line of cases that say the defendant can present their theory of defense. And so why isn't this just the defense theory of defense, that you have a guy who sells drugs? We know that because he has in the past. He has access to the property because he's the landlord. It's his drugs. So I disagree with the notion that the right to present a defense gives the defendant the right to offer any evidence that's helpful to him. Well, and I agree, but what we have said is that we can show other people who may have committed the crime, right? Now, maybe the argument is, well, they didn't show enough that he was actually ever present on the premises. They didn't show that he really truly had access. All they have is a technical legal theory. I mean, I get all that, but it's sort of, you know, here it's just that, well, it's just part of bad action. It's being offered only to prove that they acted consistently with it, and therefore it comes out. And I'm just not sure that's true. Yeah. So, again, I would say the rules of evidence apply to both parties. So enforcing 404B against the defendant is not fundamentally unfair, and Supreme Court and this Court have constantly said that that is not an infringement on the right to present a defense, to enforce neutral evidence. Right. But if, in fact, this evidence is being offered for motive, opportunity, intent, someone else to have committed the crime. Yeah. And you're saying that's just all speculative? Correct. And that's what the Court held, that there is not that specific connection to the case. It's all this speculative propensity inference, and it doesn't match the evidence. And my time's up, so I'll just point the Court to my brief on those points and the harmlessness of this evidence. So for those reasons, the Court, or the government asked this Court to confirm. Thank you. A couple things quickly, Your Honor. Regarding the government's argument that the defense position was speculative, the evidence in the record is clear that the landlord pleaded guilty to selling fentanyl out of the house. And there's nothing speculative about that. And that conduct occurred 11 to 12 months after the defendants, or after police found the fentanyl in the hidden compartment in a safe, which didn't have Mr. Perrow's fingerprints on it, a safe that required a key to open. And at the time of his arrest and searching, his residents found no key to the safe. So speculative? No. Not at all. I think a jury would have been very interested in hearing that type of evidence. Regarding the other argument by the government, it complains that the defense hasn't shown sufficient prejudice for their egregious violations of the discovery order, I'd ask the Court to look at page 25 of the reply brief. The defense responded to that very same argument. Page 25, we wrote that it is clear from the district court record that Perrow had no opportunity to prepare to meet the evidence, and that's what the district court held, that Perrow had no reason to investigate the witness because no discovery indicated that she had any relevant information to add to the case, and it is impossible to make an appellate record of what an investigation would have revealed or how the defense would have tried the case differently if he had been armed with the knowledge that Barnes wasn't a concerned citizen. Did you ask for an in-court or in-trial continuance of a day or two in order to conduct that investigation? No, Your Honor. Is that a problem? A day or two continuance for a trial? I don't know if that's even something that's done in Iowa. I mean, I've done it on any number of occasions, and it's not all that uncommon in the Dakotas. So that's the reason why I ask. No, it wasn't asked, and frankly, I didn't think about it at that time. We were asking for a mistrial. In looking back at the transcript of the witness's testimony, just last night I saw that there was evidence that she had a no-contact order between herself and my client. My client was the protected party. So the dates of that no-contact order would have been nice to have known, but I do dispute and object to the government's statement that there was no prejudice. Thank you, Your Honor. Thank you, counsel. We appreciate your appearance today. The case is submitted, and we'll issue an opinion in due course.